**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STANLEY BLACK & DECKER, INC., THE BLACK & DECKER CORPORATION, and BLACK & DECKER (U.S.) INC., <br><br> Plaintiffs, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br> Defendants. | Case No. 26-cv-07484 |

**COMPLAINT**

Plaintiffs Stanley Black & Decker, Inc., The Black & Decker Corporation, and Black & Decker (U.S.) Inc. ("Plaintiffs" or "SBD") hereby bring the present action against the Partnerships and Unincorporated Associations Identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over SBD's claims pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because Defendants structure their business activities to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached

1

hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers; offer shipping to the United States, including Illinois; accept payment in U.S. dollars; and, on information and belief, sell products using infringing and counterfeit versions of SBD's federally registered trademarks (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused SBD substantial injury in the state of Illinois.

## II. INTRODUCTION

3.       SBD filed this case to prevent e-commerce store operators who trade upon SBD's reputation and goodwill from further selling and/or offering for sale Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. The e-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate SBD's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and inner workings of their counterfeiting operation. SBD is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect consumers from purchasing Unauthorized Products over the Internet. SBD has been, and

continues to be, irreparably damaged through consumer confusion because of Defendants' actions and therefore seeks injunctive and monetary relief.

## III. THE PARTIES

4.　　Plaintiff Stanley Black & Decker, Inc. is a corporation duly organized and existing under the laws of the State of Connecticut, with its principal place of business located at 1000 Stanley Drive, New Britain, Connecticut, 06053. Stanley Black & Decker, Inc., is the successor-in-interest to The Stanley Works.

5.　　Plaintiff The Black & Decker Corporation is a Maryland corporation having its principal place of business at 701 East Joppa Road, Towson, Maryland 21286. The Black & Decker Corporation is a subsidiary of Stanley Black & Decker, Inc. The Black & Decker Corporation owns all trademark and trade dress rights related to the DEWALT® brand name.

6.　　Plaintiff Black & Decker (U.S.) Inc. is a Maryland corporation having its principal place of business at 701 East Joppa Road, Towson, Maryland 21286. Black & Decker (U.S.) is the exclusive seller and distributor in the United States of DEWALT products and is the United States licensee, from The Black & Decker Corporation, of all trademark and trade dress rights associated with DEWALT.

7.　　SBD manufactures and sells a wide range of DEWALT tools, batteries, accessories, and clothing. Since 1924, the DEWALT name has stood for the professionals and still does. The DEWALT name is a commitment to get the job done right and for over 100 years DEWALT has been helping build the modern world. SBD has brought its DEWALT tools into the modern day by relentlessly developing and delivering packaging, products, and programs engineered to build a more sustainable tomorrow.

3

8.      SBD continually innovates and refines its DEWALT products by learning from real-world jobsite performance and understanding what works, and what does not. The jobsite is where you will find DEWALT products. It is where SBD tests DEWALT tools, where SBD uses them, and where DEWALT tools prove themselves. SBD updates DEWALT tools to make the tools work better for the professional using it. To carry the DEWALT name, a tool must not only stand up to the rigors of the jobsite, but it must also get the job done. And it must do so day after day. From being used in the space exploration and aircraft spaces, to having Bluetooth® technology incorporated into them, SBD's DEWALT tools stay at the forefront of jobsite innovation.

9.      SBD markets and sells a variety of DEWALT branded products, including batteries, power tools, clothing, and accessories (collectively, "DEWALT Products"). DEWALT Products have become enormously popular, driven by SBD's quality standards. Among the purchasing public, DEWALT Products are instantly recognizable as such. DEWALT Products are distributed and sold to consumers through various distribution channels including Ace Hardware, Home Depot, Lowes Store, and the official DEWALT online shop, https://www.dewalt.com/. DEWALT Products are sold only by SBD or through authorized retail channels and are recognized by the public as being exclusively associated with SBD and the DEWALT brand.

10.      SBD has used the DEWALT trademark, and other trademarks, for many years and has continuously sold products under its trademarks ("DEWALT Trademarks"). As a result of this long-standing use, strong common law trademark rights have amassed in the DEWALT Trademarks. SBD's use of the marks has also built substantial goodwill in the DEWALT Trademarks. The DEWALT Trademarks are famous marks and valuable assets of SBD. DEWALT Products typically include at least one of the DEWALT Trademarks.

4

11. The DEWALT Trademarks are registered with the United States Patent and Trademark Office and are included below.

| Registration Number | Trademark | Registration Date | Goods and Services |
|---|---|---|---|
| 7,667,932 | DEWALT | Jan. 28, 2025 | For: Lighting products, namely, flashlights, work lights, portable head lamps, all-purpose area lights and accessories, namely light bulbs and tri-pods for use with lighting products, excluding for use with camera in Class 011. |
| 6,843,027 | DEWALT | Sep. 13, 2022 | For: Nails and metal staples for construction or industrial use in Class 006.<br><br>For: Power tools, namely, staplers and nailers in Class 007. |
| 6,179,707 | DEWALT | Oct. 20, 2020 | For: Hand tools in the nature of utility bars, namely, wrecking, flat, pry, and molding bars; Handheld non-powered hammers, hatchets, axes and sledgehammers; Hand tools in the nature of clamps, namely, bar, angle, pipe, band, corner and trigger clamps; Hand tools, namely, socket sets comprised of sockets, extensions, adaptors and ratchet also sold individually; Hand tools in the nature of knives, namely, fixed blade knives, utility knives, pocketknives, retractable utility knives and |

| | | | snap-off knives, folding knives, and blades for use or sold with said knives; Manual-operated fastening tools, namely, staple guns, hammer tackers, tackers, pliers for assembling fasteners, and riveters; Hand tools, namely, chalk line reels, chalk and line refills being replacement parts for chalk line reels; Hand tools, namely, nail sets and punches; Hand tools, namely, crimpers, pipe duct cutters, aviation snips, seamers, notchers, pliers, nippers, locking pliers, tin snips and snap lock punches; Hand tools, namely, screwdrivers, ratcheting screwdrivers, hex keys, and folding hex keys; Multi-purpose hand tools comprised of a combination of two or more of a plier, scissor, screwdriver, wire-cutter, wire stripper, and blade; Hand tools, namely, chisels, wood chisels and cold chisels; Hand tools, namely, handheld saws, handsaws, hacksaws and jab saws; Hand tools, namely, handheld wrenches, combination wrenches, ratcheting wrenches, adjustable wrenches, box end wrenches, open end wrenches, and torque wrenches in Class 008. |
|---|---|---|---|

| | | | |
|---|---|---|---|
| 5,640,184 | DEWALT | Jan. 01, 2019 | For: Metal products, namely, metal wall fasteners and metal masonry anchors in Class 006. |
| 5,640,189 | DEWALT | Jan. 01, 2019 | For: Unprocessed epoxy resin; construction industry adhesives; industrial adhesives for masonry and concrete use in Class 001. |
| 4,974,115 | DEWALT | Jun. 07, 2016 | For: Battery powered lawn and garden tools, namely, string trimmers, hedge trimmers, blowers for lawn debris, chain saws and mowers for Class 007. |
| 4,641,690 | DEWALT | Nov. 18, 2014 | For: Ladders, namely, step, extension, attic and multi ladders, step stools and project ladders, all primarily made of non-metal; ladder accessories, namely, non-metal ladder shoes, non-metal ladder locks, covers specially designed for non-metal ladders, ropes and non-metal tie downs specially designed for non-metal ladders in Class 020. |
| 4,641,691 | DEWALT | Nov. 18, 2014 | For: Ladders, namely, step, extension, attic and multi ladders, step stools and project ladders, all primarily made of metal; ladder accessories, namely, metal ladder shoes, covers specially designed for metal ladders, ropes and metal tie downs specially designed for metal ladders in Class 006. |

| | | | |
|---|---|---|---|
| 3,664,084 | DEWALT | Aug. 04, 2009 | For: Tool belts; tool pouches for attachment to tool belts, namely, nail pouches, electrician pouches, drywall pouches, pliers/tin snip pouches, trim carpenter's pouches, telecommunication pouches, tool holders in the nature of electrical test kit holders, hammer holders, tape measure holders; and drill holsters in Class 008.<br><br>For: Soft-sided tool bags sold empty; Fastener bags for holding fastener tools sold empty in Class 018. |
| 3,618,505 | DEWALT | May 12, 2009 | For: Educational publications and reference books, namely, training manuals and professional reference books and manuals in the field of construction and maintenance in Class 016. |
| 3,277,015 | DEWALT | Aug. 07, 2007 | For: Laser levels in Class 009. |
| 2,958,104 | DEWALT | May 31, 2005 | For: Protective industrial footwear for professionals in the construction, remodeling, woodworking and like industries for Class 009.<br><br>For: Footwear for professionals in the construction, remodeling, woodworking and like industries, not for protective purposes in Class 025. |

8

| 2,786,301 | DEWALT | Nov. 25, 2003 | For: Portable Electric Generators in Class 007. |
|---|---|---|---|
| 2,656,133 | DEWALT | Dec. 03, 2002 | For: Safety eye glasses in Class 009.<br><br>For: Wristwatches and clocks in Class 014.<br><br>For: Bumper stickers; pens; pencils in Class 016.<br><br>For: Counter Stools in Class 020.<br><br>For: Insulated cup holders; portable coolers; coffee cups; sports bottles; insulated travel mugs in Class 021.<br><br>For: Clothing, namely gloves, hats, jackets, shirts, sweatshirts, t-shirts and caps in Class 025. |
| 2,605,311 | DEWALT | Aug. 06, 2002 | For: Air compressors in Class 007. |
| 1,734,403 | DEWALT | Nov. 24, 1992 | For: Power operated tools and machines; namely, drills, and hammer drills; impact wrenches; planers; routers; sanders; and saws; namely, chop saws, circular saws, miter saws, reciprocating saws, bits; namely, drill bits, router bits, and screwdriver bits; drill chucks; drill chuck keys; hole cutter; hole saw mandrels; saw blades; and wheels; namely, abrasive wheels, grinding wheels, and wire wheels; and parts |

| | | | |
|---|---|---|---|
| | | | therefor in Class 007.<br><br>For: Battery packs and battery chargers in Class 009. |
| 621,152 | DEWALT | Feb. 14, 1956 | For: Power saws and woodworking machines, and parts thereof and attachments therefor in Class 007. |
| 4,062,422 | YELLOW & BLACK | Nov. 29, 2011 | For: Power tools, namely, drills, cordless drills, hammerdrills, screwdrivers, circular saws, worm drive saw, miter saws, reciprocating saws, jigsaws, grinders, chop saws, sanders and routers; power tool parts and accessories, namely, drill bits, hole saws, hole saw mandrels, screwdriver tips, dust bags for vacuum cleaners, crown stops, blades, grinding wheels, abrasive wheels and collets in Class 007. |
| 3,727,526 | | Dec. 22, 2009 | For: Circular blade for electric power saw in Class 007. |

10

| | | | |
|---|---|---|---|
| 2,999,545 | | Sep. 27, 2005 | For: Power tool cases made of plastic sold as a unit with a power tool in Class 007. |
| 2,902,806 | | I.Nov. 16, 2004 | For: Battery chargers for use with electric power tools in Class 009. |
| 2,901,234 | | Nov. 09, 2004 | For: Power Operated Tools Namely, Sanders, Grinders, Drills, Circular and Reciprocating Saws, Plate Joiners, Routers, Jig Saws, Impact Drivers and Shears in Class 007. |
| 2,658,744 | | Dec. 10, 2002 | For: Safety eye glasses in Class 009.<br><br>For: Wristwatches and clocks in Class 014.<br><br>For: Bumper stickers; pens; pencils in Class 016.<br><br>For: Counter Stools in Class 020.<br><br>For: Insulated cup holders; portable coolers; coffee cups; |

11

| | | | |
|---|---|---|---|
| | | | sports bottles; insulated travel mugs in Class 021.<br><br>For: Clothing, namely, gloves, hats, jackets, shirts, sweatshirts, t-shirts and caps in Class 025. |
| 1,950,781 | DEWALT | Jan. 23, 1996 | For: toy vehicles in Class 028. |
| 1,734,404 | DEWALT | Nov. 24, 1992 | For: power operated tools and machines, namely, drills, drill presses, and hammer drills; impact wrenches; planers; routers; sanders; and saws, namely, chop saws, circular saws, miter saws, reciprocating saws, and table saws; bits, namely, drill bits, router bits, and screwdriver bits; drill chucks; drill chuck keys; hole cutter; hole saw mandrels; saw blades; and wheels, namely, abrasive wheels, grinding wheels, and wire wheels; and parts therefor in Class 007.<br><br>For: battery packs and battery chargers in Class 009. |
| 4,926,594 | POWERED BY DEWALT | Mar. 29, 2016 | For: Battery Packs in Class 009. |
| 7,993,379 | DEWALT ELITE SERIES | Oct. 21, 2025 | For: Blades for power saws, namely, circular saw blades, reciprocating saw blades, and diamond blades; drill bits, hammer bits, and holesaws for power drills and power |

|  |  |  | hammer drills; abrasive wheels for power grinding tools in Class 007. |
| --- | --- | --- | --- |
| 6,755,429 | DEWALT POWERSTACK | Jun. 07, 2022 | For: Batteries, battery packs and battery chargers therefor, all for use with power tools in Class 009. |
| 6,130,400 | FLEXVOLT | Aug. 18, 2020 | For: Powered outdoor tools, namely, blowers, chainsaws, string trimmers, and mowers in Class 007.<br><br>For: Battery packs and chargers for use with outdoor powered tools in Class 009. |
| 5,101,742 | FLEXVOLT | Dec. 13, 2016 | For: Power tools, namely, drills, rotary hammers, grinders, circular saws, miter saws, and reciprocating saws, and including power tool accessories, namely, circular saw blades, reciprocating saw blades, holesaws, and grinding wheels in Class 007.<br><br>For: Battery packs and chargers for use with power tools in Class 009. |
| 6,457,330 | FLEXVOLT ADVANTAGE | Aug. 17, 2021 | For: power tools, namely, drills, grinders, circular saws, and reciprocating saws in Class 007. |
| 5,612,591 | XR | Nov. 20, 2018 | For: Oscillating power tool saw blades, oscillating power tool cutting blades, and oscillating power tool abrasive tools, each for use with oscillating power tools in Class 007. |

| | | | |
|---|---|---|---|
| 4,793,824 | XR | Aug. 18, 2015 | For: Power tools, namely, drills, hammer drills, impact drivers, nailers and oscillating saws in Class 007.<br><br>For: Batteries and battery packs for use with power tools in Class 009. |
| 4,793,825 | | Aug. 18, 2015 | For: Power tools, namely, drills, hammer drills, impact drivers, nailers and oscillating saws in Class 007.<br><br>For: Batteries and battery packs for use with power tools in Class 009. |
| 7,699,330 | XR POWERPACK | Feb. 18, 2025 | For: Battery packs for power tools in Class 009. |
| 7,699,331 | XR POWERPACK | Feb. 18, 2025 | For: Battery packs for power tools in Class 009. |
| 7,668,852 | | Jan. 28, 2025 | For: Chargers for battery packs used with powered tools in Class 009. |
| 5,772,583 | | Jun. 11, 2019 | For: USB battery pack adaptor in Class 009. |

14

| 3,066,990 | | Mar. 14, 2006 | For: Electric power tools having an electric motor or other electric driving system, or powered by electric energy, namely a bench grinder in Class 007. |
|---|---|---|---|
| 3,067,004 | | Mar. 14, 2006 | For: Electric power tools having an electric motor or other electric driving system, or powered by electric energy, namely a plate joiner in Class 007. |
| 3,066,991 | | Mar. 14, 2006 | For: Electric power tools having an electric motor or other electric driving system, or powered by electric energy, namely a router in Class 007. |
| 3,064,656 | | Mar. 07, 2006 | For: Electric power tools having an electric motor or other electric driving system, or powered by electric energy, namely a chop saw in Class 007. |
| 3,064,663 | | Mar. 07, 2006 | For: Electric power tools having an electric motor or other electric driving system, or powered by electric energy, namely a construction site battery charger and radio in Class 009. |

| | | | |
|---|---|---|---|
| 3,064,653 | | Mar. 07, 2006 | For: Electric power tools having an electric motor or other electric driving system, or powered by electric energy, namely a cordless circular saw in Class 007. |
| 3,064,652 | | Mar. 07, 2006 | For: Electric power tools having an electric motor or other electric driving system, or powered by electric energy, namely a straight/die grinder in Class 007. |
| 3,064,671 | | Mar. 07, 2006 | For: Electric power tools having an electric motor or other electric driving system, or powered by electric energy, namely a joist and stud drill in Class 007. |
| 3,064,650 | | Mar. 07, 2006 | For: Electric power tools having an electric motor or other electric driving system, or powered by electric energy, namely a polisher in Class 007. |
| 3,064,654 | | Mar. 07, 2006 | For: Electric power tools having an electric motor or other electric driving system, or powered by electric energy, namely shears in Class 007. |

| | | | |
|---|---|---|---|
| 3,064,649 | | Mar. 07, 2006 | For: Electric power tools having an electric motor or other electric driving system, or powered by electric energy, namely a trim router in Class 007. |
| 3,064,666 | | Mar. 07, 2006 | For: Electric power tools having an electric motor or other electric driving system, or powered by a source of electric energy, namely a battery pack, distributed for use in construction, specialty trades, woodworking, retail sales and/or general service and repair industries and used in the foregoing trades, industries or in and around the home in Class 009. |
| 2,474,794 | | Aug. 07, 2001 | For: Electric power tools having an electric motor or other electric driving system, or powered by electric energy, namely a chop saw in Class 007. |

17

| | | | |
|---|---|---|---|
| 2,447,322 | | May 01, 2001 | For: Electric power tools having an electric motor or other electric driving system, or powered by electric energy, namely a band saw in Class 007. |
| 2,447,328 | | May 01, 2001 | For:  Electric power tools having an electric motor or other electric driving system, or powered by a source of electric energy, namely a cordless right angle drill, distributed for use in the construction, specialty trades, woodworking, retail sales and/or general service and repair industries and used in the foregoing trades, industries or in and around the home in Class 007. |
| 2,447,327 | | May 01, 2001 | For: Electric power tools having an electric motor or other electric driving system, or powered by electric energy, namely a nibbler in Class 007. |
| 2,447,318 | | May 01, 2001 | For: Electric power tools having an electric motor or other electric driving system, or powered by electric energy, namely a planer in Class 007. |

| | | | |
|---|---|---|---|
| 2,447,321 | | May 01, 2001 | For: Electric power tools having an electric motor or other electric driving system, or powered by electric energy, namely a plate joiner in Class 007. |
| 2,447,323 | | May 01, 2001 | For: Electric power tools having an electric motor or other electric driving system, or powered by electric energy, namely, a rotary hammer in Class 007. |
| 2,447,316 | | May 01, 2001 | For: Electric power tools having an electric motor or other electric driving system, or powered by electric energy, namely a scroll saw in Class 007. |
| 2,447,319 | | May 01, 2001 | For: Electric power tools having an electric motor or other electric driving system, or powered by electric energy namely, a table saw in Class 007. |
| 2,437,867 | | Mar. 27, 2001 | For: Electric power tools having an electric motor or other electric driving system or powered by electric energy namely, a sliding compound miter saw in Class 007. |

| | | | |
|---|---|---|---|
| 2,348,051 | | May 09, 2000 | For: Electric power tools having an electric motor or other electric driving systems, or powered by electric energy, namely a hand sander in Class 007. |
| 2,348,072 | | May 09, 2000 | For: Electric power tools having an electric motor or other electric driving systems, or powered by a source of electric energy, namely an electric screwdriver, distributed for use in the construction, specialty trades, and used in the foregoing trades, industries or in and around the home in Class 007. |
| 2,348,052 | | May 09, 2000 | For: Electric power tools having an electric motor or other electric driving system, or powered by electric energy namely, chop saw in Class 007. |
| 2,348,050 | | May 09, 2000 | For: Electric power tools having an electric motor or other electric driving system, or powered by a source of electric energy, namely a drill, distributed for use in the construction, specialty trades, woodworking, retail sales and/or general service and repair industries and used in the foregoing trades, industries or in and around |

| | | | the home in Class 007. |
|---|---|---|---|
| 2,347,982 | | May 09, 2000 | For: electric power tools having an electric motor or other electric driving system, or powered by a source of electric energy, namely a cordless drills and driver drills, distributed for use in the construction, specialty trades, woodworking, retail sales and/ or general service trades, industries and used in the foregoing trades, industries or in and around the home in Class 007. |
| 2,347,983 | | May 09, 2000 | For: electric power tools having an electric motor or other electric driving system, or powered electric energy, namely a circular saw in Class 007. |
| 2,348,049 | | May 09, 2000 | For: Electric power tools having an electric motor or other electric driving system, or powered by a source of electric energy, namely a hand held grinder, distributed for use in the construction, specialty trades, woodworking, retail sales and/ or general service and repair industries and used in the foregoing trades, industries or in and around the home in Class 007. |

21

| 2,348,073 | | May 09, 2000 | For: Electric power tools having an electric motor or other electric driving system, or powered by a source of electric energy, namely a hammer drill, distributed for use in the construction, specialty trades, woodworking, retail sales and/or general service and repair industries and used in the foregoing trades, industries or in and around the home in Class 007. |
|---|---|---|---|
| 2,347,981 | | May 09, 2000 | For: electric power tools having an electric motor or other electric driving system, or powered by electric energy, namely, reciprocating saw in Class 007. |
| 2,348,074 | | May 09, 2000 | For: electric power tools having an electric motor or other driving systems, or powered by electric energy, namely, an impact wrench in Class 007. |
| 2,348,070 | | May 09, 2000 | For: Electric power tools having an electric motor or other driving system, or powered by electric energy, namely, jig saw in Class 007. |

| 2,347,976 | | May 09, 2000 | For: electric power tools having an electric motor or other electric driving system, or powered by electric energy, namely a miter saw in Class 007. |
|---|---|---|---|

12.     The U.S. registrations for the DEWALT Trademarks are valid, subsisting, and in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the DEWALT Trademarks constitute *prima facie* evidence of their validity and of SBD's exclusive right to use the DEWALT Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for the DEWALT Trademarks are attached hereto as **Exhibit 1**.

13.     The DEWALT Trademarks are exclusive to SBD and are displayed extensively on DEWALT Products and in marketing and promotional materials. The DEWALT Trademarks are also distinctive when applied to DEWALT Products, signifying to the purchaser that the products come from SBD and are manufactured to SBD's quality standards. Whether SBD manufactures the products itself or contracts with others to do so, SBD has ensured that products bearing the DEWALT Trademarks are manufactured to the highest quality standards.

14.     The DEWALT Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. The innovative marketing and product designs of DEWALT Products have enabled the DEWALT brand to achieve widespread recognition and fame and have made the DEWALT Trademarks some of the most well-known marks in the construction industry. The widespread fame, outstanding reputation, and significant

goodwill associated with the DEWALT brand have made the DEWALT Trademarks valuable assets of SBD.

15. SBD has expended substantial time, money, and other resources advertising, promoting, and marketing the DEWALT Trademarks. In fact, SBD has expended millions of dollars in advertising, promoting, and marketing featuring the DEWALT Trademarks. DEWALT Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the DEWALT Trademarks are widely recognized and exclusively associated by consumers as being high-quality products sourced from SBD. DEWALT Products have become among the most popular of their kind in the U.S. The DEWALT Trademarks have achieved tremendous fame and recognition, adding to the inherent distinctiveness of the marks. As such, the goodwill associated with the DEWALT Trademarks is of immeasurable value to SBD.

16. Defendants are unknown individuals and business entities who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to SBD. On information and belief, Defendants reside and/or operate in foreign jurisdictions and redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rules of Civil Procedure 17(b).

17. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for SBD to learn Defendants' true identities and the exact inner workings of their

24

counterfeit network. If Defendants provide additional credible information regarding their identities, SBD will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

18.     The success of the DEWALT brand has resulted in significant counterfeiting of the DEWALT Trademarks. Because of this, SBD has implemented a brand protection program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, SBD has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like Amazon.com, Inc. ("Amazon"), eBay, Inc. ("eBay"), Roadget Business PTE. Ltd. ("SHEIN"), and Walmart, Inc. ("Walmart"), including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online counterfeiters. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 2**).

19.     Because counterfeit products sold by offshore online counterfeiters do not enter normal retail distribution channels, the U.S. economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020. *Id*. When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of counterfeit products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. *Id.* Additionally, it is estimated that the importation of counterfeit goods costs the United

States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id.*

20.     Online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with [] e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186–87. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the counterfeit seller] to reappear under a new false name and address in short order." *Id*. at p. 161.

21.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases; offer

shipping to the United States, including Illinois; accept payment in U.S. dollars; and, on information and belief, sell Unauthorized Products to residents of Illinois.

22. Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars in multiple ways, including via credit cards, Amazon Pay, , Pex, and/or Stripe. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish their stores from an authorized retailer. SBD has not licensed or authorized Defendants to use the DEWALT Trademarks, and none of the Defendants are authorized retailers of DEWALT Products.

23. Many Defendants also deceive unknowing consumers by using the DEWALT Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract consumers using search engines to find websites relevant to DEWALT Products. Other e-commerce stores operating under the Seller Aliases omit using the DEWALT Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for DEWALT Products.

24. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

25. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias

27

registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and inner workings of their counterfeiting operation, and to avoid being shut down.

26. Defendants are collectively causing harm to SBD's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes a collective harm to SBD in a way that individual actions, occurring along, might not.

27. E-commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by brand owners. Websites like sellerdefense.cn also tip off e-commerce store operators, like Defendants, of new intellectual property infringement lawsuits filed by brand owners, such as SBD, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

28. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of SBD's enforcement efforts. E-commerce store operators like Defendants maintain offshore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to SBD.

29. Defendants are working to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from SBD have knowingly and willfully used, and continue to use, the DEWALT Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

30. Defendants' unauthorized use of the DEWALT Trademarks in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause, and has caused, confusion, mistake, and deception by and among consumers and is irreparably harming SBD.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

31. SBD hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

32. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the DEWALT Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The DEWALT Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from products offered, sold, or marketed under the DEWALT Trademarks.

33. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the DEWALT Trademarks without SBD's permission.

29

34.     SBD owns the DEWALT Trademarks. SBD's United States registrations for the DEWALT Trademarks are in full force and effect. On information and belief, Defendants have knowledge of SBD's rights in the DEWALT Trademarks and are willfully infringing and intentionally using infringing and counterfeit versions of the DEWALT Trademarks. Defendants' willful, intentional, and unauthorized use of the DEWALT Trademarks is likely to cause, and is causing, confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

35.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

36.     SBD has no adequate remedy at law and if Defendants' actions are not enjoined, SBD will continue to suffer irreparable harm to its reputation and the goodwill of the DEWALT Trademarks.

37.     The injuries and damages sustained by SBD have been directly and proximately caused by Defendants' wrongful reproduction, use of advertisement, promotion, offering to sell, and/or sale of Unauthorized Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

38.     SBD hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

39.     Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with SBD or the origin, sponsorship, or approval of Defendants' Unauthorized Products by SBD.

40.     By using the DEWALT Trademarks in connection with the offering for sale and/or sale of Unauthorized Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

41.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

42.     SBD has no adequate remedy at law and will continue to suffer irreparable harm to its reputation and the associated goodwill of the DEWALT brand if Defendants' actions are not enjoined.

### PRAYER FOR RELIEF

WHEREFORE, SBD prays for judgment against Defendants as follows:

1)     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

     a. using the DEWALT Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a DEWALT Product or is not authorized by SBD to be sold in connection with the DEWALT Trademarks;

     b. passing off, inducing, or enabling others to sell or pass off any product as a DEWALT Product or any other product produced by SBD, that is not SBD's or not produced under the authorization, control, or supervision of SBD and approved by SBD for sale under the DEWALT Trademarks;

31

    c.   committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or supervision of SBD, or are sponsored by, approved by, or otherwise connected with SBD;

    d.   further infringing the DEWALT Trademarks and damaging SBD's goodwill; and

    e.   manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for SBD, nor authorized by SBD to be sold or offered for sale, and which bear any of the DEWALT Trademarks;

2)    Entry of an Order that, upon SBD's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms, including Amazon, eBay, SHEIN, and Walmart, shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the DEWALT Trademarks;

3)    That Defendants account for and pay to SBD all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the DEWALT Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4)    In the alternative, that SBD be awarded statutory damages, for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2), of $2,000,000 for each and every use of the DEWALT Trademarks;

5)    That SBD be awarded its reasonable attorneys' fees and costs; and

6)    Award any and all other relief that this Court deems just and proper.

Dated this 26th day of June 2026.        Respectfully submitted,


                                         /s/ Martin F. Trainor
                                         Martin F. Trainor
                                         Alexander Whang
                                         Victor B. Chahin
                                         TME Law, P.C.
                                         10 S. Riverside Plaza
                                         Suite 875
                                         Chicago, Illinois 60606
                                         708.475.1127
                                         martin@tme-law.com
                                         alexander@tme-law.com
                                         victor@tme-law.com

                                         *Counsel for Plaintiffs Stanley Black & Decker, Inc.,
                                         The Black & Decker Corporation, and Black &
                                         Decker (U.S.) Inc.*

33